UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT CARMACK,

      Plaintiff,

v.

CITY OF DETROIT, *et al.*,

      Defendants.

Case No. 18-cv-11018
Hon. Matthew F. Leitman

_____/

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SANCTIONS (ECF Nos. 56, 58)

In 2018, Plaintiff Robert Carmack engaged attorney Andrew Paterson to file this civil action against the City of Detroit and Mayor Michael Duggan (among others). Paterson had a "hard" time getting his "arms around" Carmack's story, and Paterson did not "know whether [there was] support [for] any of [the] stuff [Carmack said]." (11/29/2018 Hr'g Tr., ECF No. 50, PageID. 900-901.) Yet Paterson filed this action anyway. Paterson thereafter refused to concur in the Defendants' requests that he dismiss certain baseless claims, violated an order of this Court prohibiting him from taking discovery, and twice attempted to mislead the Court on material matters. Paterson's course of conduct warrants the imposition of sanctions under the Court's inherent power. Accordingly, for the reasons explained in more detail below, the Court **GRANTS IN PART AND DENIES IN PART** the motions for

sanctions filed by Mayor Duggan, the City of Detroit, and the Detroit Building Authority (the "DBA") (*see* Motions, ECF Nos. 56, 58).[1]

**I**

**A**

On March 28, 2018, Paterson filed what he wrongly called a Verified Complaint against Mayor Duggan, the City of Detroit, and others.[2] (*See* Compl., ECF No. 1.) Relevant to Mayor Duggan and the City of Detroit:

- Count I alleged that Mayor Duggan, the City of Detroit, and others retaliated against Carmack for Carmack's exercise of his First Amendment rights when the Defendants took steps to demolish property Carmack allegedly owned at 8124 Michigan Avenue (the "8124 Property"). (*See id.* at ¶¶ 13-51, PageID.4-12.);

- Count II alleged that the City of Detroit fraudulently and unlawfully conveyed title to the 8124 Property to another person in violation of state law. (*See id.* at ¶¶ 81-94, PageID.18-20.);

- Count IV alleged that the City of Detroit fraudulently and unlawfully conveyed title to the 8124 Property to another person and took other actions related to the 8124 Property in violation of the Fifth Amendment. (*See id.* at ¶¶ 95-108, PageID.20-23.);

---

[1] Pursuant to Local Rule 7.1(f)(2), the Court concludes that oral argument is not necessary and would not aid its decision on Defendants' motions.

[2] Paterson called his pleading a "Verified Complaint," but he did attach any verification to the Complaint. For ease of reference, the Court will refer to Paterson's filing as the "Verified Complaint" even though it lacked verification.

- Count V alleged that the City of Detroit "unconstitutionally and unlawfully took physical possession of [Carmack's] property without Due Process of law" and without providing Carmack a "Notice to Quit" in violation of the Fifth Amendment. (*Id.* at ¶111, PageID.23-24.);

- Count VI alleged that the City of Detroit committed a trespass under state law when it "proceeded with the unlawful demolition" of the 8124 Property. (*See id.* at ¶¶ 119-25, PageID.25-26.);

- Count VII alleged that the City of Detroit converted Carmack's property in violation of Michigan common law. (*See id.* at ¶¶ 126-30, PageID. 27.);

- Count VIII alleged that the City of Detroit converted Carmack's property in violation of Michigan Compiled Laws § 600.2919a. (*See id.* at ¶¶ 131-37, PageID.28-29.); and

- Count IX sought attorney's fees under 42 U.S.C. § 1988. (*See id.* at ¶¶ 138-40, PageID.29-30.)

On May 10, 2018, Mayor Duggan and the City Detroit filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* First Mot. to Dismiss, ECF No. 6.) Before filing that motion, their counsel held a "conference" with Paterson. (*Id.*, PageID.52.) During the conference, defense counsel explained "the nature of the motion and its legal basis" and "requested … concurrence [from Paterson] in the relief sought" in the motion. (*Id.*) Paterson refused to grant concurrence. (*See id.*)

In the motion to dismiss, Mayor Duggan and the City of Detroit argued that each of the counts of the Verified Complaint described above failed as a matter of law for the following reasons:

- Count I "fail[ed] to allege plausible facts to show, directly or indirectly, that any action was taken" by Mayor Duggan or the City of Detroit in retaliation for Carmack's alleged exercise of his First Amendment rights. (*Id.*, PageID.49.);

- Count I and Counts III through VIII failed to state a cognizable claim because they were "premised upon [Carmack's] ownership" of the 8124 Property, and Carmack did not own that property. (*Id.*, PageID.51.);

- The Court did not have jurisdiction over Carmack's claims under the *Rooker-Feldman* doctrine. (*See id.*);

- All claims premised on Carmack's alleged ownership of the 8124 Property were "barred by the principles of *res judicata*." (*Id.*)  Mayor Duggan and the City of Detroit explained that the Wayne County Circuit Court had entered a judgment of foreclosure on the 8124 Property that vested fee simple absolute in that property in the Wayne County Treasurer. (*See id.*, PageID.51, 61.) They submitted a copy of the judgment as an exhibit to the motion. (*See* Judgment of Foreclosure, ECF No. 6-4.)  They argued that because the judgment vested title to the 8124 Property in the Wayne County Treasurer, Carmack could not pursue claims based on his alleged ownership of that property. (*See* First Mot. to Dismiss, ECF No. 6, PageID.71.)

- The Court "lack[ed] jurisdiction to hear [the] Fifth Amendment taking claims" in Counts IV and V of the Verified Complaint because Carmack "ha[d] failed to exhaust his state law remedy of inverse condemnation." (*Id.* at PageID.52.);

- The state-law tort claims in Counts VI, VII, and VIII were barred by Michigan's Government Tort Liability Act, Michigan Compiled Laws § 691.1401 *et seq.* (*See id.*); and

- The claim for attorney's fees failed under 42 U.S.C. § 1988 because that statute "provides a remedy, not a cause of action." (*Id.*)

## B

The Court held a telephonic status conference with counsel to discuss the motion to dismiss on June 6, 2018. (*See* Notice to Appear, ECF No. 14.) During that conference, the Court offered Paterson the opportunity to file an amended complaint on Carmack's behalf. The Court directed Paterson to carefully review the claims made in the Verified Complaint in light of the arguments that Mayor Duggan and the City of Detroit raised in their motion to dismiss. The Court further instructed Paterson to determine whether it was appropriate to dismiss any of the claims brought in the Verified Complaint. Finally, the Court told Paterson to include in the amended complaint any additional factual allegations that could support Carmack's claims.

## C

Paterson filed what he wrongly called a Verified Amended Complaint on Carmack's behalf on June 20, 2018.[3] (*See* Am. Compl., ECF No. 16.) In that

---

[3] As with the Verified Complaint, Paterson did not attach a verification to the Verified Amended Complaint. For ease of reference, the Court will refer to this filing as the "Verified Amended Complaint" even though it lacked verification.

pleading, Paterson re-asserted each of the claims against Mayor Duggan and the City of Detroit that were the subject of the initial motion to dismiss described above.  In many instances, Paterson repeated the claims verbatim from the Verified Complaint; in others, he made minor revisions.[4]  Paterson made two revisions to the Verified Amended Complaint that could reasonably be considered substantive:

- Paterson named the DBA as a Defendant for the first time; and
- Paterson added a claim against the City of Detroit, Mayor Duggan, and the DBA titled "Supplemental State Law Claim – Tortious Interference with Business Relationship or Expectancy." (*Id.* at Count IX, PageID.305-308.)

## D

Mayor Duggan and the City of Detroit moved to dismiss the Verified Amended Complaint on July 11, 2018. (*See* Second Mot. to Dismiss, ECF No. 22.) Before filing that motion, their counsel again contacted Paterson, explained the basis of the motion, and requested concurrence from Paterson in the relief sought in the motion. (*See id.*, PageID.372.)  By that time, Paterson was already familiar with the

---

[4] For example, Paterson's allegations in Counts III-VIII are identical in both the Verified Complaint and the Verified Amended Complaint aside from (1) changing the names of the parties, (2) changing references to references to the Fourteenth Amendment in place of references to the Fifth Amendment, and (3) correcting two typographical errors. In Count I of the Verified Amended Complaint, Paterson added only some limited, additional factual allegations in paragraphs 45, 46, and 47 related to Mayor Duggan's alleged retaliation and Carmack's history of receiving business from the City of Detroit.  Otherwise, the vast majority of Count I in the Verified Amended Complaint is repeated verbatim from the Verified Complaint.

arguments contained in the motion because they were essentially the same arguments that Mayor Duggan and the City of Detroit made in their motion to dismiss the original Verified Complaint. Paterson again refused to grant his concurrence in the motion. (*See id.*)

The DBA also moved to dismiss the Verified Amended Complaint. (*See* DBA Mot., ECF No. 31.) The DBA contacted Paterson the day before it filed its motion in an attempt to seek concurrence, but Paterson did not respond to that request before the motion was filed. (*See id.*, PageID.601.)

### E

Paterson's responses to both motions to dismiss were largely identical and included many of the same arguments repeated verbatim. (*Compare* ECF No. 32, PageID.647-650, *with* ECF No. 46, PageID.802-804.) In the responses, Paterson agreed to dismiss, with prejudice, Counts III-IX of the Verified Amended Complaint against the City of Detroit and Counts IV, VI, VII, and VIII against the DBA. (*See* ECF No. 32, PageID.656; ECF No. 46, PageID.810.) These same claims (with the exception of Count IX) had originally appeared in the Verified Complaint. Paterson re-asserted them in the Verified Amended Complaint even though the City of Detroit and Mayor Duggan had demonstrated – in their motion to dismiss the original Verified Complaint – that they were flawed.

**F**

On September 12, 2018, the Court entered an order staying all discovery in this action pending resolution of the Defendants' motions to dismiss (the "Discovery Order"). (*See* Discovery Order, ECF No. 39.)  The Court explained in that order that staying discovery would "enhance the efficient progression of this action because the pending motions [sought] dismissal of a substantial number of claims and parties, and the Court's decision on the motions [would] clarify the claims and parties that should be the focus of discovery." (*Id.*, PageID.767.)  The Court therefore ordered that "all discovery" be "stayed until further order from the Court specifically permitting the parties to take discovery." (*Id.*; emphasis in original.)  As Paterson later admitted, and as described more fully below, he violated the Discovery Order and conducted discovery related to this case after the Court entered that order.

**G**

The Court held a hearing on the motions to dismiss on November 29, 2018. (*See* 11/29/2018 Hr'g Tr., ECF No. 50.)  At the hearing, the Court first asked Paterson about the statement in his response brief that he was dismissing Counts III-IX against the City of Detroit.  The Court asked Paterson why he did not dismiss those claims when the City of Detroit sought concurrence before it filed its motion to dismiss.  Paterson responded that he did not grant concurrence because Carmack

would not allow him to do so. In Paterson's words, "sometimes you manage your client. Sometimes, the client manages you." (*Id.*, PageID.896.)

In addition, at the hearing, counsel for Mayor Duggan and the City of Detroit informed the Court that Paterson had violated the Discovery Order. Counsel explained that the City of Detroit and Carmack were involved in a separate state-court eviction action in which the City was attempting to evict Carmack from a property located at 8107 Michigan Avenue in Detroit. Counsel then said that Paterson had issued subpoenas in that case in order to compel witnesses to testify about *this* case. (*See id.*, PageID.862-863.) Counsel noted, for example, that Paterson devoted an "entire deposition" in the state-court eviction action to the 8124 Property – the primary property at issue in this case – even though the 8124 Property was "not at issue" in the eviction action. (*Id.*)

When the Court questioned Paterson about these depositions, he first said that they were "totally not discovery" and were "in effect, recorded interviews." (*Id.* at PageID.899.) That was false. Paterson later admitted that the "interviews" were in fact "depositions with a court reporter and a transcript." (*Id.*) Paterson also initially claimed that the witnesses "voluntarily came forward." (*Id.*) That too was false. Under questioning from the Court, Paterson acknowledged that he had served the witnesses with subpoenas – legal process that compels the attendance of a witness. (*See id.*)

Paterson then conceded that the depositions went "beyond the scope" of the state-court eviction action and related to issues being litigated solely in this case. (*Id.*, PageID.900.)  He explained that he needed to take the depositions in order to determine whether there was any factual basis for the allegations that he made in the Verified Complaint and Verified Amended Complaint.  Paterson had the following colloquy with the Court concerning the depositions:

> THE COURT: During these depositions, did you ask the witnesses questions that both **went beyond the scope of the [] eviction action and related to issues that are being litigated in this case before me**?
>
> PATERSON: **I did.  I did.  I did**. [….] They helped me verify some of the allegations in this complaint. [….] It was not discovery though.  **They were helping me verify what my client has told me.**  My client says a lot of things and it's hard to get my arms around it and does he have support for what he says.  **I need to know whether you can support any of this stuff.**
>
> [….]
>
> THE COURT:  **You're telling me, I used the state court to figure out if there is a basis for the allegations I made in the complaint that I signed in front of you … this is a troubling path**.
>
> PATERSON:  **It is.  It is.  And I understand that**.  In hindsight, I certainly just could have interviewed them.  I did want a transcript for my client [Carmack] to review and look at so that he's confirmed in fact they said what they told me.

(*Id.*, PageID. 900-901; emphasis added.)

In addition to attempting to mislead the Court about the nature of the depositions and the violations of the Discovery Order, Paterson also attempted to mislead the Court about the existence of the state-court foreclosure judgment on the 8124 Property. As explained above, Mayor Duggan and the City of Detroit argued that a foreclosure judgment vesting title to the 8124 Property in the Wayne County Treasurer was fatal to some of Carmack's claims. At the hearing on the motion to dismiss, Paterson told the Court that no final judgment of foreclosure had ever been entered with respect to the 8124 Property and that "the foreclosure case against all defaulted properties in the City of Detroit was stayed." (*Id.*, PageID.890-893.) The Court then specifically inquired about the judgment of foreclosure on the 8124 Property, and Paterson said that it did not exist:

> THE COURT: So you're telling me – I just want to make sure I understand – that there is no piece of paper, order signed by a state court judge saying that [the] 8124 [Property] is foreclosed?
>
> PATERSON: That's correct. That's correct. That's exactly the issue.

(*Id.*, PageID.892-893.) Paterson told the Court that the judgment did not exist even though the City of Detroit and Mayor Duggan had attached the judgment to both of their motions to dismiss. (*See* ECF No. 6-4; ECF No. 22-4.) Paterson acknowledged that the Wayne County Circuit Court had in fact entered a final judgment of foreclosure against the 8124 Property only after counsel for the Defendants

highlighted the existence of that foreclosure judgment and identified the existence of that judgment in the record. (*See* 11/29/2018 Hr'g Tr., ECF No. 50, PageID.906-907.)

## H

On December 4, 2018, Paterson filed a notice with the Court voluntarily dismissing all of Carmack's claims against Mayor Duggan, the City of Detroit, and the DBA. (*See* Notice of Dismissal, ECF No. 51.)  Mayor Duggan, the City of Detroit, and the DBA thereafter filed their motions for sanctions. (*See* ECF Nos. 56, 58.)  Paterson filed a response on February 9, 2019. (*See* ECF No. 65.)  The Court then ordered, and the parties filed, supplemental briefs on the sanctions issue. (*See* ECF Nos. 67, 68, 72.)

## II

A district court may assess sanctions against parties "under its inherent power when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011).  A district court also "has the inherent power to sanction a party when that party exhibits bad faith, including the party's refusal to comply with the court's orders." *Youn v. Track, Inc.*, 324 F.3d 409, 420 (6th Cir. 2003).  "The imposition of inherent power sanctions requires a finding of bad faith … or conduct tantamount to bad faith." *Id.*

"A court's reliance upon its inherent authority to sanction derives from its equitable power to control the litigants before it and to guarantee the integrity of the court and its proceedings." *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512 (6th Cir. 2002). "Even if there were available sanctions under statutes or various rules in the Federal Rules of Civil Procedure … the inherent authority of the Court is an independent basis for sanctioning bad faith conduct in litigation." *Id.* at 511.

### III

The Court exercises its inherent power to sanction Paterson because he acted in bad faith, or engaged in conduct tantamount to bad faith, throughout this litigation.

First, Paterson filed two complaints accusing the Defendants of misconduct even though he later admitted that it was "hard" to get his "arms around" what Carmack had told him and even though he did not know whether he could "support any of [the allegations]" that he made in those pleadings. (11/29/2018 Hr'g Tr., ECF No. 50, PageID.900.) That Paterson filed both pleadings without knowing whether he could support "any" of the allegations shows that he was proceeding in bad faith and without any regard for the rules that specifically required him to conduct a reasonable investigation into his claims before he filed them. *See* Fed. R. Civ. P. 11(b)(3) ("By presenting to the court a pleading, written motion, or other paper … an attorney … certifies that to the best of the person's knowledge, information, and

belief, formed after an inquiry reasonable under the circumstances … the factual contentions have evidentiary support….").

Second, after Mayor Duggan and the City of Detroit filed a motion to dismiss that highlighted the flaws in Paterson's initial Verified Complaint, Paterson filed a Verified Amended Complaint that repeated, nearly verbatim, the same claims from the Verified Complaint. Paterson clearly did not follow the Court's instruction to carefully review the allegations that he made in the Verified Complaint and to address the alleged deficiencies in that pleading in the Amended Verified Complaint.

Third, Paterson violated Local Rule 7.1 when he refused to grant concurrence prior to the filing of Defendants' motions to dismiss. Under Local Rule 7.1, a party may not "unreasoanbl[y] withhold[] consent" when concurrence is sought before a motion is filed. E.D. Mich. Local Rule 7.1(a)(3). The purpose of this rule

> is to preclude the incurrence of unnecessary fees, costs and expenses by the party who intends to file the motion where the non-moving party concurs with the relief sought by the party intending to file the motion. If the non-moving party's concurrence is not given until after the motion is filed, the purpose of avoiding unnecessary expenditures is rendered moot because the moving party necessarily will have already expended the time and money in researching and drafting the motion, or applicable portion thereof. [….]

*Dupree v. Cranbrook Educ. Cmty.*, 2012 WL 1060082, at *13-14. In *Dupree*, the court sanctioned an attorney "for failing to concur in the dismissal" of certain claims prior to the filing of a summary judgment motion where, in response to that motion,

counsel withdrew those claims. *See id.* at *13. Here, as in *Dupree*, "If [Paterson] had responded to Defendants' counsel's [request for concurrence] and agreed that 'withdrawal' of [the counts Paterson withdrew after the motions were filed] was appropriate, Defendants would not have had to file those portions of the motion[s ….] In other words, Defendants may not have incurred the expenses associated with moving [to dismiss] those [] counts." *Id.* at *13.[5]

Paterson's refusal to grant concurrence before the City of Detroit and Mayor Duggan filed their second motion to dismiss also led to a waste of judicial resources. In preparing for the hearing on the motion, the Court first reviewed the brief filed by the City and the Mayor and also read the key cases cited in that brief. The Court then turned to the response filed by Paterson and learned for the first time that Paterson had agreed to dismiss many of the claims addressed in the motion. Had

---

[5] In *Dupree*, the Court ultimately sanctioned the offending attorney $250 for his misconduct. The Court explained that such a small sanction was appropriate in that case because, in part, "although Defendants' counsel sought concurrence from Plaintiffs' counsel prior to filing the motion for summary judgment, such concurrence was sought only one day prior to the day the motion for summary judgment was filed. In the experience of the Court, this means it is highly probable that Defendants' counsel had already completed their research on all four counts – and likely the drafting of the motion and brief – prior to seeking concurrence. In other words, Defendants would have incurred essentially the same expense even if concurrence had been obtained." *Dupree*, 2012 WL 1060082, at *13. If the withholding of concurrence was Paterson's only misconduct in this case, the Court may well have sanctioned him a similar amount. But the totality of all of Paterson's bad-faith conduct here warrants a substantially more significant sanction than the one assessed in *Dupree*.

Paterson granted concurrence before the City of Detroit and Mayor Duggan filed their motion to dismiss, the Court could have avoided preparing to decide the claims that Paterson agreed to dismiss.

Paterson has not provided any reasonable explanation for his refusal to grant concurrence. At the hearing on the motion to dismiss, he said that he did not dismiss the claims before the motion was filed because Carmack would not allow him to do so. In his words, "sometimes the client manages you." But having a strong-willed client does not justify a lawyer's violation of the Local Rule concerning concurrence. Indeed, lawyers who practice in this Court must fulfill their obligations to comply with the governing rules even if their clients object.[6]

Fourth, Paterson violated the Discovery Order. As described above, the Discovery Order clearly and unequivocally provided that "<u>all</u> discovery" shall be "stayed until further order from the Court specifically permitting the parties to take discovery." (Discovery Order, ECF No. 39, PageID.767; emphasis in original.) Despite that order, Paterson used a state-court proceeding to take discovery related

---

[6] That Paterson ultimately chose to dismiss certain claims and then chose to voluntarily dismiss this entire action does not meaningfully lessen his culpability. An attorney may not "use frivolous legal positions to run up legal costs for an opposing party, without rebuke, so long as he abandons them before a court can reject them." *Davis v. Detroit Downtown Dev. Auth.*, --- F. App'x at ---, 2019 WL 3543170, at *3 (6th Cir. Aug, 5, 2019) (rejecting argument that sanctions against Paterson were inappropriate because Paterson "stopped pursuing [] frivolous RICO and procedural-due-process claims when plaintiffs dismissed their complaint").

to this case.  Indeed, *by his own admission*, he took the depositions of third parties in the state-court eviction action and inquired about matters that (1) were unrelated to the eviction action and (2) were related to this action.  Paterson's actions clearly violated the Discovery Order.

Paterson now says that there was nothing inappropriate about taking the depositions in the eviction action and asking questions that related to this action because "many facts of this case overlap" with Carmack's "affirmative defense[s] in the eviction proceeding." (Supp. Br., ECF No. 72, PageID.1460.)  But that alleged overlap does not excuse Paterson's conduct.  Paterson admitted that during the depositions, he asked questions that were related *solely* to this action.  The Court asked Paterson directly "did you ask the witnesses questions that both *went beyond the scope of the [] eviction [action]* and related to issues that are being litigated in this case?" (11/28/2018 Hr'g Tr., ECF No. 50, PageID.899-900; emphasis added.) Paterson answered: "I did.  I did.  I did." (*Id.*)  And when the Court asked him why he did so, he said that he needed to "verify what [Carmack] had told [him]" and needed to "know whether [he could] support" any of the allegations that he made in *this* action. (*Id.*, PageID.900.)  That is no excuse for violating an order of this Court. Indeed, Paterson's excuse for taking the depositions underscores that he pursued this action in bad faith.  The explanation exposes that when Paterson filed the Verified

Complaint and Verified Amended Complaint, he did not know whether he could support the allegations in those pleadings.

Finally, Paterson twice attempted to mislead the Court on material matters. He initially gave untruthful answers about (1) whether, in violation of the Discovery Order, he took depositions in the state-court eviction action that related solely to this action and (2) whether a state court had entered a final judgment of foreclosure on the 8124 Property – a key fact related to the Defendants' *res judicata* defense. Paterson's lack of candor further demonstrates his bad faith.

In sum, Paterson's actions, considered collectively, show a disturbing pattern of bad-faith behavior and a willful disregard for the Court's rules and orders. Sanctions against Paterson under the Court's inherent authority are therefore warranted.

## IV

The Court next turns to the amount of the sanctions. "It is well established under Supreme Court and Sixth Circuit precedents that a court's inherent power to sanction serves a punitive purpose, based on the need to deter misconduct and vindicate the court's authority." *Williamson v. Recovery Ltd. P'ship*, 826 F.3d 297, 305 (6th Cir. 2016). Courts "have broad discretion under their inherent powers to fashion punitive sanctions. Although sanctions cannot be so unreasonable that they constitute an abuse of discretion, there is no requirement of a perfect causal

connection between the sanctioned conduct and the [sanctions] awarded, due to the punitive nature of the sanctions." *Id.*

Here, the Court concludes that a reasonable sanction is $7,500. Anything less would not be sufficient to achieve deterrence. Paterson has a "prolific history" of engaging in litigation tactics that "could be defined, in many instances, as repetitive, vexatious, and frivolous." *Davis v. Johnson*, 664 F. App'x 446, 450 (6th Cir. 2016). That is why so many federal and state courts have sanctioned him. *See*, *e.g.*, *Davis v. Detroit Downtown Dev. Auth.*, --- F. App'x ---, 2019 WL 3543170, at *1 (6th Cir. Aug. 5, 2019) (affirming sanctions against Paterson and concluding that he "pursued two frivolous claims and one frivolous motion, necessitating unnecessary legal fees for [the] defendants"); *Richards v. Wayne Cty. Airport Auth.*, 2014 WL 2600550 (Mich. Ct. App. June 10, 2014) (affirming sanctions against Paterson and holding that he had filed a "frivolous" action). And several courts have specifically found that he has proceeded in bad faith or engaged in conduct tantamount to bad faith. *See, e.g.*, *Lotus Indus., LLC v. Archer*, 2019 WL 4126558, at *1 n.1 (E.D. Mich. Aug. 30, 2019) (Patti, M.J.) (noting that court had previously denied a renewed motion for leave to file a first amended complaint due to Paterson's "bad-faith motive" and his inappropriate use of judicial proceedings to "use this suit to [retrieve the defendant's] financial information, regardless of whether it is relevant" to plaintiff's claims); *Williams v. Detroit Downtown Dev. Auth.*, 2018 WL 4901158, at

*5-6 (E.D. Mich. Oct. 9, 2018) (dismissing action as sanction for Paterson's conduct, noting that Paterson had " violated three of the [c]ourt's discovery orders, ignored the Federal Rules of Civil Procedure, and [] been less than honest in [his] representations to the [c]ourt," and holding that Paterson had engaged in "contumacious" conduct); *Lotus Indus. v. City of Detroit*, 2018 WL 4005608, at *4 (E.D. Mich. Aug. 22, 2018) (in case where Paterson represented the plaintiffs, denying plaintiff's motion for leave to amend, concluding that "[p]laintiffs have flagrantly disregarded a court order by relying on a [a] deposition in crafting their amended complaint" where a court order prohibited the use of that deposition, and holding that Paterson's "troubling inclusion of allegations pulled straight from [the] deposition is bad faith conduct that is only exacerbated by [his] clear misrepresentations about the substance of [the] testimony").[7]  Under these circumstances, a strong sanction – and $7,500 is such a sanction – is necessary to achieve deterrence and vindicate the Court's authority.

The Court does not believe that a sanction of greater than $7,500 is necessary. Paterson is a solo practitioner, and the Court is confident that he will feel a

---

[7] *See also Detroit Downtown Dev. Auth. v. Lotus Indus.*, No. 341520 (Mich. Ct. App. Dec. 21, 2017) (order denying application for leave to appeal) (sanctioning Paterson and "find[ing] that Attorney Paterson signed [a] motion for immediate consideration without first making a reasonable inquiry, and from that we must conclude that the document was filed for an improper purpose to harass or to cause needless increase in the cost of litigation").

substantial impact from having to pay the $7,500 from his firm's funds. All in all, $7,500 is the right amount of sanctions here.

V

The Court recognizes that the type of legal work Paterson does – filing civil actions against government officials that aim to ensure their compliance with the law – is laudable and often essential. And the Court is loath to chill the filing of legitimate claims against public officials. Indeed, serious public interest lawyers certainly need some leeway to file legitimate and/or novel claims against state actors.

The Court's ruling here should pose no threat to zealous civil rights and public service litigation. The Court has imposed sanctions here only because Paterson's conduct fell far outside the realm of what could be considered permissible zealous advocacy.

VI

To the extent that Defendants seek sanctions against Carmack, the Court declines to award those sanctions. Paterson committed the sanctionable conduct here. Defendants have also moved for sanctions against Paterson and/or an award of attorney fees under 28 U.S.C. § 1927, 42 U.S.C. § 1988, and Rule 11 of the Federal Rules of Civil Procedure. However, the Court concludes that it is most appropriate to sanction Paterson under the Court's inherent power.

## VII

For all of the reasons stated above, Defendants' motions for sanctions (ECF Nos. 56, 58) are **GRANTED IN PART**. Paterson shall pay sanctions to Defendants in the amount of $7,500 by not later than November 1, 2019. The sanctions shall be paid as follows:

- $2,500 to Mayor Duggan;

- $2,500 to the City of Detroit; and

- $2,500 to the DBA.

The motions for sanctions are **DENIED IN PART** to the extent that they seek any other relief.

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: September 25, 2019


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 25, 2019, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764